IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| DARRYLE PEOPLES | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. DKC 2005-1643 |
| AMF BOWLING CENTERS, INC. | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

AMF BOWLING CENTERS, INC., Defendant, by BRYANT, KARPINSKI, COLARESI & KARP, KEVIN KARPINSKI and AMY MEZEWSKI, its attorneys, submits this memorandum of law in support of its Motion for Summary Judgment.

BRYANT, KARPINSKI, COLARESI
& KARP

BY:     /s/
KEVIN KARPINSKI

     /s/
AMY MEZEWSKI
120 East Baltimore Street
Suite 1850
Baltimore, Maryland 21202
410-727-5000
Attorneys for Defendant AMF Bowling
Centers, Inc.

**STATEMENT OF THE CASE**

Darryle Peoples (hereinafter "Plaintiff"), a Maryland resident, alleges that he was injured as a result of an incident which took place on or about February 2, 2004, while bowling at the AMF Clinton Lanes, which is located in Clinton, Maryland. Plaintiff further alleges that Defendant breached various duties owed to him, a business invitee, and therefore, is liable for his injuries. The Complaint asserts a cause of action for negligence.

Plaintiff filed suit in the Circuit Court for Prince George's County. On or about June 15, 2005, Defendant timely removed the case to the United States District Court for the District of Maryland on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§1332, as Defendant is an out of state corporation with its principal place of business in another state, and the amount in controversy exceeds the jurisdictional amount of $75,0000.00.

**STATEMENT OF FACTS**

Plaintiff, who is a regular bowler, appeared at the AMF Clinton lanes at an unspecified time on February 4, 2004. See Plaintiff's Answer to Interrogatory No. 29, attached hereto as Exhibit 1. Plaintiff was bowling in a tournament and believes he bowled on lanes 17 and 18. See deposition of Darryle Peoples, dated January 3, 2006, p. 8, attached hereto as Exhibit 2. The tournament consisted of three (3) games, each of which was played on a different lane. Exhibit 2, p. 11. Plaintiff fell during the eighth or ninth (8th or 9th) frame of the third (3rd) game. Exhibit 2, pp. 11-12.

Plaintiff did not recall what time he arrived at the bowling center, but believed that he fell somewhere in between 4:00 and 6:00 p.m. Exhibit 2, p. 10. The factual basis for Plaintiff's claim is that his "foot fell through the floor board which was negligently

maintained or constructed such that he was able to fall through and injure himself. See Exhibit 1, Answer No. 30. Plaintiff described the manner in which the incident took place as follows: "I was bowling and stepped in front of the ball return after throwing the ball down the lane. As I stepped back, my foot fell through a board in the floor and I twisted my ankle and knee and impacted my hip on the ball return." See Exhibit 1, No. 7; Exhibit 2, p. 8. Plaintiff released the ball and watched the ball go down the lane as he was walking backwards. Exhibit 2, p. 16. A board that was located near the ball return "flipped" when Plaintiff stepped on it, which caused his foot to fall through the floor. Exhibit 2, p. 14. During deposition, the following colloquy took place:

> Q. Prior to your injury, did you happen to look at that area? Did you look?
>
> A. Before I bowled?
>
> Q. Yeah.
>
> A. Before I bowled, the board was there. It wasn't a noticeable hole in the floor. It was covered. The lanes were covered with wood.
>
> \* \* \* \*
>
> Q. So, as far as you could tell, you could not see that there was any problem?
>
> A. No, there wasn't any problem. It was just like it was normal.

Id., pp. 16-17. In addition to describing the floor board as appearing "normal," Plaintiff further stated that "[i]t did not look beat up or anything." Id., p. 32. Plaintiff described the floor boards as fitting together like a puzzle and that one could not tell that there was a hole there, "it just looks perfect." Id., 32-33.

2

Prior to the incident, Plaintiff did not make any reports to any AMF employees regarding a possible defect with regard to the lane. Id., pp. 17-18. Plaintiff testified that he declined treatment at the scene, but sought treatment a few days after the incident after consulting an attorney. Id., p. 18-19.

Plaintiff named Norbert Taylor and Rayveon as eyewitnesses to the incident, but those individuals were never further identified as defined in Defendant's Interrogatories, which were propounded on June 17, 2005. See Exhibit 1, Answer No. 8. Plaintiff also recalled that a person named J.D., whom he believed to be the manager at the time, witnessed the incident and "filled out" something. Exhibit 2, p. 15. However, Plaintiff did not see the document or review its contents thereafter. Id.

It is the policy of Defendant to have each bowling center complete a customer accident investigation report whenever a customer reports that an incident occurred on the premises of an AMF bowling facility. See Affidavit of Tracey Range, attached hereto as Exhibit 3. It is also Defendant's policy for bowling centers to report any customer-reported incidents to the Risk Management department within twenty-four (24) hours of their occurrence. Exhibit 3. All customer accident investigation reports are maintained by the AMF Risk Management Department. Id. Tracey Range, AMF Risk Coordinator, has reviewed all customer accident investigation reports for February 2004, and cannot locate any reports which reflect that the incident at issue actually took place. Id; see also Defendant's Answers to Interrogatory No. 16, attached hereto as Exhibit 4.

Insofar as the incident involving Plaintiff was not documented in any fashion,

3

Defendant does not concede that the incident actually took place.  <u>See</u> Defendant's Answers to Interrogatory No. 2, attached hereto as Exhibit 4.  Prior to Plaintiff initiating suit, Defendant did not have any knowledge of the existence of a hazard on its lane.  <u>See</u> Exhibit 4, Answer No. 12.

## ARGUMENT

**I.    Summary Judgment Standard**.

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 247 (1986).  Rule 56 requires the plaintiff to come forward with the minimal facts to show a defendant may be liable under the claims alleged.  <u>See</u> Rule 56(e). "A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely." <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946, 958-59 (4th Cir. 1984); <u>quoting</u> <u>Seago v. North Carolina Theaters, Inc.</u>, 42 F.R.D. 627, 640 (E.D.N.C. 1966), <u>aff'd</u>, 388 F.2d 987 (4th Cir. 1967).  There must be evidence on which the jury could reasonably find for the plaintiff.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252 (1986).

When a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is also appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The court views the facts and all reasonable inferences derived therefrom in the light most favorable to the non-moving party in order

4

to determine whether there is a genuine issue of material fact. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

The allegations which are contained in Plaintiff's Complaint are not evidence, and cannot defeat a motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves..."). In viewing the facts of the record in the light most favorable to Plaintiffs, Defendant submits that it is entitled to summary judgment as a matter of law.

**II.   PLAINTIFF HAS FAILED TO ADDUCE ANY EVIDENCE OF NOTICE**

This case is governed by Maryland law inasmuch as the incident arose in Maryland. Ramos v. Southern Maryland Elec. Co-Op., Inc., 996 F.2d 52, 54 (4th Cir. 1993). In order for Plaintiff to recover, he must establish: (1) a duty that was breached, (2) a causal connection between the breach and his injury, and (3) damages. Brown v. Dermer, 357 Md. 344, 356, 744 A.2d 47, 54 (2000); citing Richwind Joint Venture 4 v. Brunson, 335 Md. 661, 670, 645 A.2d 1147, 1151 (1994) (and cases cited therein). Whether a legal duty exists is a question of law for the Court. Jackson v. A.M.F. Bowling Ctrs., Inc., 128 F. Supp. 2d 307, 311 (D. Md. 2001); citing Valentine v. On Target, Inc., 353 Md. 544, 549, 727 A.2d 947, 949 (1999); see also Restatement (Second) of Torts § 328 B(b) (1965) (the court's function is to determine whether duty exists).

Whether an owner of real or personal property is liable to a person injured on their property is contingent upon the individual's status while on the property. Rowley v.

Mayor and City Council of Baltimore, 305 Md. 456, 464-65, 505 A.2d 494, 498 (1986) ; citing Sherman v. Suburban Trust Co., 282 Md. 238, 242, 384 A.2d 76 (1978). In turn, an individual's status while on the property determines the standard of care or duty owed to the individual.  Jackson v. A.M.F. Bowling Ctrs., Inc., 128 F. Supp. 2d 307 , 311 (D.Md. 2001).

Plaintiff alleges that he was a business invitee on the day in question.  An invitee is one invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business. See BG&E v. Lane, 338 Md. 34, 656 A.2d 307, 312 (1995), overruled on other grounds, 348 Md. 680, 705 A.2d 1144 (1998); Wagner v. Doehring, 315 Md. 97, 553 A.2d 684, 686 (1989).  The owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover.  Morrison v. Suburban Trust Co., 213 Md. 64, 68-69, 130 A.2d 915 (1957); Peregoy v. Western Md. R.R. Co., 202 Md. 203, 207, 95 A.2d 867 (1953).  However, "ordinary care" depends upon the circumstances involved.  See Giant Food, Inc. v. Mitchell, 334 Md. 633, 640 A.2d 1134, 1135 (1994).  The mere fact that Plaintiff was injured on Defendant's premises does not raise a presumption of negligence, as Defendant was not an insurer of Plaintiff's safety. See id.

Liability cannot be imposed unless Plaintiff can prove that Defendant: (1) created the dangerous condition, (2) actually knew of the condition, or (3) constructively knew of the condition, sufficient time had passed that, through the exercise of ordinary care, it

6

should have discovered the hazard. Burwell v. Easton Memorial Hosp., 83 Md. App. 684, 687-88, 577A.2d 394 (1990). The mere existence of a defect is insufficient to impose liability upon a business owner. Ronk v. Corner Kick, Inc., 850 F.Supp. 369, 371 (D. Md. 1994)(and cases cited therein.) Plaintiff bears the burden to show that the Defendant had actual or constructive knowledge of its existence. Lexington Market v. Zappala, 233 Md. 444, 197 A. 2d 147 (1964); Montgomery Ward & Co. v. Hairston, 196 Md. 595, 78 A. 2d 190 (1951).

In the case at bar, Plaintiff, by his own admission, did not advise Defendant that there was a hazardous condition on the lane prior to becoming injured. Plaintiff occupied the lane for quite some time and bowled into the eighth or ninth (8th or 9th) frame with at least one (1) other person. Further, the lane was presumably occupied by other bowlers prior to Plaintiff's occupancy of the lane insofar as a tournament was taking place and each game was played on a different lane. Moreover, there is no evidence that Defendant was aware that the alleged hazard existed prior to Plaintiff's occupancy of the lane. Consequently, it is clear from the record before this Court that Plaintiff has not adduced any evidence that Defendant had actual knowledge of the alleged defect with regard to its lane on the evening in question.

It is equally clear that Defendant did not have constructive notice of the existence of a defect on its lane on the evening in question. The law does not impose the duty to conduct continuous inspections upon Defendant. In Lexington Market Authority v. Zappala, 233 Md. 444, 197 A.2d 147 (1964), the plaintiff sued a parking garage, alleging

that she slipped and fell on a spot of oil or grease as she was walking to her car. In finding that plaintiff failed to show actual and/or constructive notice, the Court stated:

> The plaintiff in the instant case did not observe any oil or grease on the floor when she parked her car. When she returned less than two hours later, she slipped while attempting to enter her car from the passenger side. For all we know, the oil or grease may have leaked from a car occupying the space beside her car, only a few moments before she returned. She did not see the oil or grease before she slipped. She had a large paper bag in her arms. It may well be that a garage keeper should anticipate that oil or grease may occasionally leak from parked cars, but he is not an insurer and we think it would be unreasonable to hold that it is his duty to continuously inspect and sand down any and all leakage as soon as it occurs, even if we assume that periodic inspections are necessary.

Lexington Market, 233 Md. at 446, 197 A.2d at 148.

It is well settled that under Maryland law, in order to prove constructive notice, a plaintiff must show that the dangerous condition arose at a time sufficient to permit the defendant to have discovered its existence through "the exercise of ordinary care." Burwell, 83 Md. App. at 688, 577 A.2d 394 (quoting Rawls v. Hochschild, Kohn & Co., 207 Md. 113, 120, 113 A.2d 405 (1955)).[1] The plaintiff in Burwell could not survive a defense

---

[1] Accord, Leannarda v. Lansburgh's Dept. Store, 260 Md. 701, 706, 273 A.2d 149 (1971) (even if the condition existed prior to accident, there was no evidence to show how long it had existed); Lexington Market Auth. v. Zappala, 233 Md. 444, 446, 197 A.2d 147 (1964) (lacking evidence that would establish time when oil spilled on floor, plaintiff fails to show garage keeper's constructive notice); Rawls, 207 Md. at 123, 113 A. 2d 405 (mere presence of water on stairway insufficient "to warrant inference that it had been there long enough to have enabled defendant to discover and correct it by the exercise of ordinary care"); Montgomery Ward & Co. v. Hairston, 196 Md. 595, 599, 78 A.2d 190 (1951) (no constructive notice when evidence does not support an "inference that foreign substance. . .was [on floor] for an appreciable time before the accident"); Burkowske, supra, 50 Md.

motion for summary judgment even though she contended in an affidavit that a piece of lettuce on which she had slipped was on the floor for a long time because it was "wilted and discolored." Burwell, 83 Md. App. at 688, 577 A.2d at 395. The court disregarded her contention and concluded that:

> the fact that the lettuce was discolored raise[d] no inference that the salad had been on the stairs for any length of time at all. The lettuce could have been brown before it ever landed on the stairs, or it could have turned brown when [the plaintiff] stepped on it.

Id., at 689, 577 A.2d at 396. The defense was therefore entitled to judgment because evidence as to the particular time at which a condition arose must be more than mere speculation. Id.

The holding of Ronk v. Corner Kick, Inc., 850 F.Supp. 369, 371 (D.Md. 1994) is particularly instructive. In Ronk v. Corner Kick, Inc., the plaintiff slipped and fell on water that had accumulated on the floor of the defendant's premises. 850 F.Supp. 369. The plaintiff could not survive summary judgment despite the fact that an expert opined that the existence of water on the floor was the result of a leaking HVAC unit. Id. at 370. With regard to the evidence of constructive notice adduced by Plaintiff, Judge Messitte stated the following:

> Plaintiff's theory of constructive notice fares no better. What he

---

App. at 522, 439 A.2d 40 ("[i]t simply does not suffice to claim. . . that if appellee had inspected the bench at the instant before its collapsed, it would (or may) have noticed the condition"); Keene v. Arlan's Dept. Store of Baltimore, 35 Md. App. 250, 256, 370 A.2d 124 (1977) (plaintiffs "must stand or fall on their legal position that the evidence shows [inter alia] that knowledge was gained in sufficient time" to remedy).

9

> must prove is that Defendants had constructive notice of the wet spot and its capacity for danger on the day in question. But Plaintiff cites no evidence as to how long the particular offending wet spot was on the floor, such that Defendants should have been on notice on January 25, 1990. What he proffers instead is evidence that two individuals observed moisture on the walls and floor of the racquetball court on perhaps five-six-or seven occasions over approximately a three-year period prior to the accident. But even if moisture in those locations could be equated with an actual accumulation of water on the floor -- a highly questionable proposition -- these observed incidents are too few and far between, as well as too remote in time, to have put Defendants on constructive notice as of January, 1990 when Plaintiff fell. Plaintiff's evidence of Defendants' negligence is, in sum, no more than mere surmise, which is insufficient as a matter of law to raise a triable issue. Moulden, 239 Md. 229, 210 A.2d 724.

Ronk v. Corner Kick, 850 F. Supp. 369, 371 (D. Md. 1994).

The evidence of constructive notice that was adduced in Ronk v. Corner Kick far exceeds that which has been adduced by Plaintiff in the case *sub judice*. Indeed, the only evidence that exists in the case at bar is that Plaintiff was injured. Plaintiff has not proffered any eyewitnesses that corroborate the existence of the hazard in question. Plaintiff has not and cannot prove when the alleged condition became a hazard. In fact, Plaintiff is not absolutely certain as to which lane he occupied on the day in question; he merely believed that he bowled on lanes 17 and 18.

The only evidence that Plaintiff has adduced thus far is speculative at best and is legally insufficient to create a jury question. Moulden v. Greenbelt Consumer Services, Inc., 239 Md. 229, 233, 210 A.2d 724, 126 (1965); see also Carter v. Shoppers Food Warehouse MD Corp., 126 Md. App. 147, 727 A.2d 958 (1999) (plaintiff in a slip and fall

case claimed the store was negligent in the maintenance of a mat in allowing the edge to become turned up. The court reasoned that summary judgment was appropriate since the plaintiff failed to present evidence that store owner had actual or constructive knowledge of the condition where it was not clear how long the mat was turned up before the fall).

Drawing all inferences in a light most favorable to Plaintiff, Defendant is nevertheless entitled to summary judgment. The only inferences that could be derived from the factual record before this Court that Defendant had notice of the alleged hazard amount to nothing more than surmise and conjecture. Plaintiff has not adduced any evidence whatsoever to establish how long the allegedly dangerous condition was present on the lane. The mere fact that the floor board allegedly flipped over simply does not support a rational inference as to the length of time that the condition actually existed or that Defendant knew or should have known about the hazard. In sum, Plaintiff has not presented any evidence to establish when the floor board became loose and therefore, Plaintiff is unable to establish a prima facie case of negligence. Consequently, Defendant is entitled to summary judgment as a matter of law.

In Regent Realty Co. v. Ford, 157 Md. 514, 146 A. 457, 459 (1929), a case directly on point, the Court of Appeals reversed judgment in favor of a bowling patron without granting a new trial. In that case, the court unequivocally stated that a bowling patron recover in the absence of notice. As that court explained:

> In the present case the participants in the games were members
> of a bowling league, and had been bowling for a number of
> years--the plaintiff ten or twelve. There was no evidence that
> the alleys were not in perfect condition when the league games

11

> were begun at half past 8 o'clock, or when the six member, who continued to play after the league games, began their games at 10:30 or 10:45.
>
> * * * *
>
> One witness claims to have seen several dark 'cakey spots.' The manager denies that they were there, and there is no evidence that, if they were there, he knew it. It can hardly be said that by the exercise of ordinary care he should have known, because only one of the players claims to have seen them, and he told neither the manager nor any of his associates. Five other players were using that alley, and it was well lighted, and it was the business of each of them to use his [or her] eyes for his [or her] own protection, and yet none of them saw the alleged spots. How, then, could the manager be charged with constructive notice of their existence if they were not there before the games began?

Id. at 459.  As that court also explained, once a patron begins to bowl, the burden shifts to the patron to bring any alleged defects to the center's attention.  There is simply no "duty of the manager to intervene during the progress of a game, except at the request of a bowler."  Id.  Indeed, once a game has begun, the bowler "would naturally be the first to discover [any alleged defective condition]."  Id.

In the case *sub judice*, Plaintiff has offered no evidence to establish that Defendant was aware or should have been aware of an alleged hazardous condition on its lanes.  Plaintiff, by his own admission, testified that the floor looked "normal" and he did not see anything wrong with the floor board.  In fact, Plaintiff admitted that the floor boards looked "perfect."  The fact that Plaintiff has offered no testimony that he was able to observe any defect on the lane is not without significance.  Indeed, it indicates either that

12

there was no alleged defective condition or that the alleged condition was not readily visible. In the case of the former, Defendant is clearly without liability. In the case of the latter, Defendant is also clearly without liability since Defendant could not warn Plaintiff of that which was not known to it. Defendant is only required to use ordinary and reasonable care in making its premises safe; it is not required to detect unseen conditions.

Furthermore, once Plaintiff began to bowl, AMF had no duty to intervene in their game, except at his request. See 146 A.2d at 459. Plaintiff testified that he did not notify any AMF employees of the existence of a hazard on the lane in which he bowled. Since there is no evidence to suggest that there was any request for lane maintenance prior to the alleged incident, there is no basis for liability against AMF.

Defendant had absolutely no reason to believe that the floors were unsafe. In conclusion, Defendant neither knew, should have known, nor could have known about the alleged hazardous condition on the lane, and therefore, did not breach its duty to Plaintiff as a business invitee.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that this Court grant its Motion for Summary Judgment.

                    BRYANT, KARPINSKI, COLARESI
                    & KARP

                    BY: _____/s/_____
                          KEVIN KARPINSKI

>                          /s/
> AMY MEZEWSKI
> 120 East Baltimore Street
> Suite 1850
> Baltimore, Maryland 21202
> 410-727-5000
> Attorneys for Defendant AMF Bowling
> Centers, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May 2006, a copy of the foregoing was electronically filed, with notice to:

Jonathan Beiser, Esquire
Ashcroft and Gerel, LLP
11300 Rockville Pike
Rockville, Maryland 20852
*Attorney for Plaintiff*

>                          /s/
> Of Counsel for Defendant